[Cite as *State v. Green*, 2020-Ohio-1552.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-061 |
| | : | O P I N I O N |
| - vs - | | 4/20/2020 |
| | : | |
| JOHN L. GREEN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018 CR 01066


D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Jon R. Sinclair, 1050 Delta Avenue, Suite 200, Cincinnati, Ohio 45208, for appellant



**HENDRICKSON, P.J.**

{¶ 1} Appellant, John L. Green, appeals from his convictions in the Clermont County Court of Common Pleas for theft and misuse of a credit card. For the reasons set forth below, we affirm appellant's convictions.

{¶ 2} On November 15, 2018, appellant was charged with two counts of theft in violation of R.C. 2913.02(A)(1) and with two counts of misuse of a credit card in violation of R.C. 2913.21(B)(2), all felonies of the fifth degree. The charges arose out of allegations

that on October 10, 2017, appellant stole 65-year-old Bruce Griffis' Chase credit card and Chase debit card from a Planet Fitness gym located on Eastgate Square Drive in Cincinnati, Clermont County, Ohio.  Appellant, without Bruce's permission, used the debit card to make a purchase at a nearby Speedway and used the credit card to make multiple purchases at a nearby Target.  During his first three purchases at Target, appellant bought, among other things, gift cards, a PlayStation 4 ("PS4") console, a PS4 game, and two Xbox-1 games.  Appellant attempted a fourth transaction at Target with the Chase credit card to purchase another $250 in gift cards, but the transaction was declined.

{¶ 3}   Appellant pled not guilty to the charges.  The state filed notice of its intent to use "other acts" evidence in accordance with Evid.R. 404(B) at trial.  The "other acts" evidence the state sought to introduce was related to appellant's 2010 Hamilton County convictions for theft and possession of criminal tools.  Appellant had pled guilty and was convicted of entering a University of Cincinnati Recreation Center ("U.C. rec center") in June 2009, using an aluminum tool to break the locks off lockers in order to steal credit cards, and using the stolen credit cards at Target, Speedway, and other stores to purchase items, including gift cards.  The state contended that this evidence was admissible to show appellant's identity and modus operandi.  Appellant objected to evidence relating to the 2009 offenses being introduced at trial.  Following a hearing, the trial court ruled that the "other acts" evidence could be introduced at trial.  However, the trial court cautioned the state that if it sought to introduce testimony by an officer involved in the 2010 case, "the officer cannot testify in this trial that his investigation disclosed that Mr. Green did this or did that unless he has personal knowledge of that.  * * * [T]he personal knowledge rule applies as to other acts * * *."

{¶ 4}   A three-day jury trial commenced on April 22, 2019.  The state presented testimony from the victim, the victim's wife, a district manager of Speedway, a district

- 2 -

investigator in asset protection from Target, a regional manager of Planet Fitness, Union Township Police Officer Derek Disbennett, and University of Cincinnati Police Officer James Vestring. The victim's wife, Dee Griffis, testified that while she and her husband were on vacation in early October 2017, they were notified that their joint Chase Freedom credit card account had been hacked. Dee cancelled the cards associated with the account and Chase mailed new cards to her and Bruce. The new Chase Freedom credit cards were received on either October 9 or 10, 2017, after Dee and Bruce returned from vacation. Dee activated the credit cards, gave one to her husband, and kept one card for herself. Dee saw Bruce put the Chase credit card in his wallet and place his wallet in his pants pocket on October 10, 2017. Dee then put her new card in her purse and the two left their home. Dee went grocery shopping and Bruce left to go to the gym.

{¶ 5} While Dee was shopping, she received a fraud alert notification from Chase, informing her that a purchase had been made on the Chase credit account at Target. After determining that Bruce had not made the purchase, Dee informed Chase that the purchase was fraudulent. The credit card, which had been used in several "swipe" point of sale purchases at Target, was immediately shut down. Dee went home, accessed her online Chase credit card account, and printed off the recent transactions, which showed multiple purchases at Target. Dee also discovered that a debit card linked to her and Bruce's joint Chase checking account had been used at a Speedway without their permission. Dee called Target and Speedway and asked them to preserve any video evidence they had of the transactions. Dee then called the police to report the unauthorized transactions.

{¶ 6} Bruce testified that after he and his wife returned from vacation, his wife gave him a new Chase credit card. Bruce stated he signed the back of the card, put the card in his wallet, and placed his wallet in his back, right pants pocket. Bruce believed that his wallet was in his pants pocket when he went to work out at the Eastgate Planet Fitness on

October 10, 2017.

{¶ 7} Bruce arrived at Planet Fitness at 1:51 p.m. He changed into his workout gear in the gym's locker room. After getting changed, Bruce locked his street clothes in a locker by using a combination lock he owned. He then went to fill his water bottle and start his workout, which consisted of an hour of cardio and about an hour of weightlifting. While filling his water bottle, Bruce saw someone who looked like appellant walk by him.

{¶ 8} After Bruce had finished the cardio portion of his workout, he received a text message from his wife asking if he still had his Chase credit card on him. Bruce told Dee that his card was in his wallet, which was in his gym locker. However, Bruce decided to double check. When he arrived at his locker, Bruce found that his wallet was gone. Bruce's combination lock was hanging on the locker, but Bruce could not recall if the lock was open or still in the locked position. He recalled that the lock still worked but it had scratch marks on it that he did not believe had been there prior to the theft. Bruce denied that he used his Chase credit card to purchase anything from Target on October 10, 2017, or that he used his Chase debit card to purchase anything from Speedway on October 10, 2017.

{¶ 9} Officer Disbennett testified that he was the officer assigned to investigate the theft and unauthorized use of Bruce's debit card and credit card. After obtaining Bruce's debit and credit card statements, which showed the unauthorized transactions, Officer Disbennett visited the Eastgate Planet Fitness to see if he could obtain video evidence that would be helpful to his investigation. There was not a manger working who could access video recordings and the video footage was ultimately recorded over. Officer Disbennett was able to obtain information about what gym members had checked into the fitness center that day.

{¶ 10} Officer Disbennett visited the Speedway where Bruce's debit card had been used to make a $25.46 purchase. The officer testified the Speedway was approximately a

- 4 -

five-minute drive away from the Eastgate Planet Fitness. Video footage taken from Speedway showed a white vehicle at a gas pump at 2:35 p.m. on October 10, 2017, the time Bruce's debit card was used.

{¶ 11} Officer Disbennett then visited the Target where Bruce's Chase credit card had been used in three fraudulent transactions on October 10, 2017. The Target was less than a two-minute drive away from the Speedway. Officer Disbennett was able to obtain video footage and receipts of the transactions that corresponded to the fraudulent charges. The first transaction occurred at 2:39 p.m. and was for $411.21. This purchase included $400 worth of non-Target gift cards, a Sprite, and an energy supplement. The second transaction was made in the electronics department at 2:45 p.m., totaled $427.97, and was for the purchase of a PS4 console and game. The third transaction, which also took place in the electronics department, occurred at 2:49 p.m., totaled $117.68, and was for the purchase of two Xbox-1 games. A fourth transaction was attempted on Bruce's credit card at 2:55 p.m. for $259.08 for the purchase of a $250 gift card and a Dove product. However, the fourth transaction was declined.

{¶ 12} An asset protection district investigator from Target testified that Target's video surveillance system is extremely accurate and syncs with the scan of each item. A video can therefore be pulled at the exact moment an item is scanned to show the transaction in process. Target was able to pull video recordings of the transactions where Bruce's credit card had been used and the recordings show appellant making the purchases listed on the receipts. Target's video footage also captured appellant exiting the store.

{¶ 13} Officer Disbennett testified he was able to use the Target video footage to learn appellant's identity. He compared still photographs taken from Target's video footage to pictures of the individuals who had checked into the Eastgate Planet Fitness on October 10, 2017, around the same time that Bruce was at the gym.

{¶ 14} A regional manager of Planet Fitness testified that when a new member joins the gym, the new member is given a key card that links to the member's photo, identifying information, and billing information. When a member walks into a Planet Fitness gym, the member must swipe his or her membership card. When the member swipes his or her card, the member's photo pops up on the gym's computer screen and a gym employee checks to make sure the photo is a match to the individual using the membership card.

{¶ 15} Officer Disbennett reviewed the photos of the individuals who signed into the Eastgate Planet Fitness on October 10, 2017, and he came across appellant's photo. Appellant had signed into the Eastgate gym location at 1:32 p.m., less than 20 minutes before Bruce had signed into the gym. Officer Disbennett recognized appellant as the person in the Target surveillance recordings. Officer Disbennett pulled appellant's BMV record and photograph to confirm appellant's identity.

{¶ 16} Once appellant's identity was confirmed, Officer Disbennett obtained a list of appellant's logins at Planet Fitness. The list showed that after signing up at the Colerain Township Planet Fitness, which was located near appellant's home address, appellant began traveling to and logging in at various Planet Fitness locations throughout the Greater Cincinnati area, sometimes signing into multiple gyms in a single day. On October 10, 2017, appellant had signed into the Norwood Planet Fitness at 11:37 a.m. before making his way to the Eastgate Planet Fitness. According to the regional manager of Planet Fitness, appellant's login activity was abnormal as most gym members do not "bounce round so much" between branch locations and do not have multiple check-ins in one day at different locations.

{¶ 17} Over defense counsel's objection, and after the trial court provided the jury with a limiting instruction, Officer Vestring was permitted to testify about appellant's 2010 Hamilton County convictions for theft and possession of criminal tools. The officer

explained that in June 2009 there had been numerous complaints of wallets and personal belongings being stolen out of lockers in a U.C. rec center. People complained the items were stolen while they were working out. Some of the lockers where items were stolen had locks on them. Credit cards that were taken from the lockers had been used to purchase items at local Meijer, Target, and Speedway stores. Although Officer Vestring could not recall all the items that had been purchased with the stolen credit cards, he did recall that the credit cards had been used to buy gift cards from Meijer and Target.

{¶ 18} Appellant became a suspect in the June 2009 thefts. Officer Vestring explained that in order to use the U.C. rec center, an individual either had to be a U.C. student or had to pay for a membership. However, one could gain access to the facility by coming to the front desk, stating they were interested in joining the rec center, and asking to look around. Appellant utilized this practice to gain access to the rec center.

{¶ 19} Employees at the U.C. rec center were told to be on the lookout for appellant, as he was the individual suspected of stealing items from the rec center's lockers. On July 20, 2009, Officer Vestring received a phone call from the rec center, advising him that appellant had arrived at the rec center and had asked to look around. Believing that appellant was about to commit another theft, Officer Vestring responded to the rec center. Officer Vestring stopped appellant as he was leaving and committed a pat down of appellant's person. While conducting the pat down, a wallet fell out of appellant's pocket. When asked, appellant admitted the wallet was not his. The owner of the wallet was found in the gym. The owner of the wallet had locked his wallet in a locker before going to work out.

{¶ 20} Appellant was arrested and transported to the police station. At the station, Officer Vestring discovered that there was a tool that could be used to open the types of locks that individuals use to secure lockers and that such a tool had been used to enter the

locked lockers at the rec center. The officer searched his police cruiser and, in the area where appellant had been sitting while being transported to the station, found an aluminum tool that was about a quarter of an inch wide and two inches long. From his online research, Officer Vestring discovered that this exact type of tool could be used to open Master Locks. Appellant ultimately pled guilty and was convicted in 2010 of six counts of theft and one count of possession of criminal tools.

{¶ 21} Following Officer Vestring's testimony, the state rested its case. Appellant moved for acquittal pursuant to Crim.R. 29, but his motion was denied by the trial court. Thereafter, appellant rested his defense without calling any witnesses, the trial court provided final jury instructions, which included a limiting instruction regarding the "other acts" evidence, and the matter was submitted to the jury.

{¶ 22} The jury found appellant guilty of one count of theft and one count of misuse of a credit card of an elderly person relating to appellant's theft and use of the Chase credit card at Target. Appellant was found not guilty of the theft and misuse of a credit card charges relating to the theft and use of the Chase debit card at Speedway. On June 17, 2019, appellant was sentenced to a 12-month prison term on each conviction, and the terms were run consecutively to one another, for an aggregate prison term of 24 months.

{¶ 23} Appellant appealed his convictions, raising three assignments of error:

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE TRIAL COURT ERRED BY PERMITTING EVIDENCE UNDER EVID.R. 404(B) OF A JULY 2009 CONVICTION INVOLVING APPELLANT, JOHN GREEN, PREVENTING A FAIR TRIAL GUARANTEED BY THE OHIO AND FEDERAL CONSTITUTION.

{¶ 26} In his first assignment of error, appellant argues the trial court erred when it permitted the state to introduce testimony and evidence regarding his 2009 convictions for

theft and possession of criminal tools. Appellant argues the "other acts" evidence should not have been admitted under Evid.R. 404(B) as the state "failed to show facts of a common scheme or idiosyncratic plan" to link the crimes committed in October 2017 at Planet Fitness to the crimes committed at the U.C. rec center in June 2009. He further argues admission of the "other acts" evidence was prejudicial as it permitted the jury to conclude that since he was convicted of stealing property from the rec center's locker room in 2009, he must have also stolen from the Planet Fitness locker room in 2017.

{¶ 27} "A trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. An abuse-of-discretion standard of review is a deferential review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 28} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. However, there are certain exceptions to the general rule regarding the admission of evidence of other acts of wrongdoing. R.C. 2945.59, for instance, provides that

> [i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior

or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Additionally, Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In order for evidence to be admissible pursuant to Evid.R. 404(B), there must be substantial proof the alleged other acts were committed by the defendant and the evidence must tend to prove one of the enumerated exceptions. *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994).

{¶ 29} The Ohio Supreme Court has outlined a three-step analysis that courts should conduct in determining the admissibility of "other acts" evidence. *See Williams*, 2012-Ohio-5695 at ¶ 19. First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶ 30} After considering the three-step test set forth in *Williams*, we find that the trial court did not abuse its discretion in permitting the other acts evidence. Officer Vestring's testimony was relevant to show appellant's identity through his modus operandi. Appellant's 2010 convictions were committed in a similar manner as the October 10, 2017 offenses. Appellant was convicted in 2010 of breaking into locked lockers at a fitness center

using an aluminum tool, taking personal belongings, including credit cards, from the lockers, and using the stolen credit cards at places like Meijer and Target to buy gift cards. The individual who stole Bruce's wallet on October 17, 2017 acted similarly – breaking into Bruce's locked locker at a fitness center, leaving behind scratch marks on the lock, stealing Bruce's credit card, and using the credit card at Target to buy gift cards and other items. The shared common features between the 2009 thefts and the 2017 thefts were probative of appellant's identity as the perpetrator of the offenses. *See e.g., State v. Hignite*, 12th Dist. Warren No. CA2015-07-063, 2015-Ohio-5204, ¶ 14-21.

{¶ 31} Contrary to appellant's arguments, evidence pertaining to the 2010 convictions was not offered to show Appellant's character or his propensity for committing the theft and misuse of credit card offenses. Rather, the other acts evidence was admitted "to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *State v. Smith*, 49 Ohio St.3d 137, 141 (1990). Though appellant argues there are distinguishing facts between the 2009 offenses and the 2017 offenses, such as the manner in which access was obtained to the fitness centers and the lack of an aluminum tool being found in the 2017 case, we note that these differences do not affect the admissibility of the other acts evidence. "Admissibility is not adversely affected simply because the other [offenses] differed in some details. The acts remained probative as to identity." *State v. Jamison*, 49 Ohio St.3d 182, 187 (1990). *See also State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶ 15. The differences do, however, "affect the relative probative value of [the] events," and it is up to the jury to determine what weight to give to the evidence given the differences. *Jamison* at 187.

{¶ 32} As for the third part of the *Williams* analysis, we find that the probative value of the other acts evidence was not substantially outweighed by the danger of unfair

prejudice. The trial court gave two limiting instructions regarding Officer Vestring's testimony. Just prior to the officer's testimony, the court advised the jury as follows:

> Ladies and gentlemen, sometimes evidence is presented for one reason or limited purposes, and it's not presented for other purposes. So the evidence that you're going to receive now or are going to hear now is evidence of that type.
>
> The State intends to present evidence through this witness about the commission of wrongs or acts other than the offenses with which the Defendant is charged in this trial. This evidence is being presented and received only for a limited purpose. It is not being presented – or – and you may not consider it to prove the character of the Defendant in order to show that he acted in conformity with that character with relation to the offenses charged in this case.
>
> If you find that the evidence of other wrongs or acts is true and that the Defendant committed the wrongs or acts, you may consider that evidence only for the purpose of deciding whether it proves the identity of the person who committed the offenses in this trial.

Then, prior to the jury's deliberation, the court provided a second limiting instruction to the jury regarding the "other acts" evidence. We must presume the jury followed the court's instructions and did not consider Officer Vestring's testimony to show that appellant acted in conformity with bad character. *See Williams*, 2012-Ohio-5695, ¶ 23; *State v. Powih*, 12th Dist. Brown No. CA2016-11-023, 2017-Ohio-7208, ¶ 27.

{¶ 33} Accordingly, as the "other acts" evidence was relevant, offered for a legitimate purpose, and its probative value was not outweighed by the danger of unfair prejudice, we find that the trial court did not err in admitting the evidence at trial. Appellant's first assignment of error is overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION THUS DENYING HIS RIGHT TO A FAIR TRIAL.

{¶ 36} In his second assignment of error, appellant argues he received ineffective representation from his trial counsel who failed to object to certain hearsay and speculative statements offered by Officer Vestring.

{¶ 37} To prevail on an ineffective assistance of counsel claim, an appellant must establish that (1) his trial counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 38} We note that trial counsel's failure to object is generally viewed as trial strategy and does not, in and of itself, establish a claim of ineffective assistance of counsel. *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494, ¶ 61. "[T]rial counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 60, citing *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel. *Id.*

{¶ 39} "'Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Unless an exception applies, hearsay is inadmissible. Evid.R. 802.

{¶ 40} Appellant has identified four statements that he contends are hearsay

statements that defense counsel should have objected to at trial. He argues counsel's failure to object to such testimony prejudiced his right to a fair trial as it permitted the state to introduce information about the 2009 crimes that "severely impugned [his] character" and allowed unreliable evidence of a common scheme to be put forth by the prosecution.

**Statement No. 1**

{¶ 41} Appellant argues trial counsel should have objected to Officer Vestring's testimony that in 2009, "we were getting multiple reports of individuals who were putting their property both in lockers without lockers [sic] and in lockers with locks and they would do the workout, come back a hour or an hour and a half later and either their wallets were gone or all their stuff was gone."

{¶ 42} Appellant cannot demonstrate that counsel was deficient for not objecting to this testimony or that he was prejudiced by this statement. This statement was not a hearsay statement. As the supreme court has previously recognized, "[l]aw-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 172. To be properly admitted as non-hearsay, the testimony must satisfy three criteria: "(1) the conduct to be explained is relevant, equivocal, and contemporaneous with the statements, (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged." *Id.*, citing *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 27. Using this analysis, we find that the statement was admissible non-hearsay explaining how the investigation into the U.C. rec center thefts began. The statement met all the criteria because it was used to explain the officer's actions, the probative value was not substantially outweighed by unfair prejudice, and the statement did not connect appellant with the crimes charged. Appellant therefore cannot show that he was prejudiced by his

trial counsel's failure to object to this statement.

**Statement No. 2**

{¶ 43} Appellant also contends his trial counsel provided ineffective representation for not objecting to Officer Vestring's testimony that "during the course of the investigation back at the police department, I obtained some information that there was a tool used to alter the locks, and that's how the locks were being entered into while they were in a locked facility."

{¶ 44} The source of Officer Vestring's information was not identified at trial. It is unclear whether someone told the officer that a tool had been used or whether he came to this conclusion after reviewing the evidence in the case. Regardless of the source of the information, we find that trial counsel's failure to object to this statement was not prejudicial. The statement was offered to explain Officer Vestring's actions in conducting a search of the police cruiser after appellant's arrest and appellant has not demonstrated any prejudice by the admission of this statement.

**Statement No. 3**

{¶ 45} Following appellant's arrest, Officer Vestring found an aluminum tool in the backseat of his police cruiser where appellant had been sitting. Officer Vestring testified he "got on Google and I watched the same – which appeared to be the same type of aluminum [tool] that I recovered, unlocking a lock." Appellant argues his counsel should have objected to this testimony.

{¶ 46} Officer Vestring's testimony that he found a piece of aluminum in his cruiser where appellant had been sitting is not a hearsay statement. Rather it was the officer's direct testimony about evidence he found during his investigation. With respect to the officer's testimony about the online information showing locks being picked with the same type of tool that had been found in the police cruiser, this information was elicited on cross-

examination by defense counsel and appeared to be part of counsel's trial strategy of discrediting the officer's investigation into the 2009 offenses by pointing out that the tool found in the cruiser had never been tested by the officer but had been merely compared to the tool seen online. We will not second-guess counsel's trial strategy in asking about the officer's conduct in researching the tool online. "[T]rial counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Setty*, 2014-Ohio-2340 at ¶ 60. Moreover, "[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146. Trial counsel, therefore, did not provide deficient representation with respect to not objecting to the non-hearsay statement that the aluminum tool had been found in the police cruiser and, further, did not provide deficient representation by eliciting testimony about the officer's actions in comparing the tool to similar tools found online.

**Statement No. 4**

{¶ 47} Finally, appellant argues trial counsel provided deficient representation for not objecting to statements that indicated "Officer Vestring and his fellow officers never attempted to confirm whether the piece of [aluminum] could open locks." Officer Vestring's testimony regarding this issue was not hearsay and was elicited by defense counsel during cross-examination as part of counsel's trial strategy. Counsel was not deficient and appellant's claim of ineffective assistance of counsel therefore fails.

{¶ 48} As trial counsel did not err by failing to object to any of the alleged hearsay statements discussed above, we conclude that appellant was not denied effective representation by his trial counsel. Appellant's second assignment of error is, therefore, overruled.

{¶ 49} Assignment of Error No. 3:

{¶ 50} THE TRIAL COURT ERRED BY ENTERING JUDGMENT AGAINST THE DEFENDANT FOR THEFT AND MISUSE OF A CREDIT CARD WHERE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.

{¶ 51} In his third assignment of error, appellant argues that his convictions for theft and misuse of a credit card were not supported by sufficient evidence. Specifically, appellant contends that there was insufficient evidence of theft as Bruce was not positive that he brought his wallet to Planet Fitness on October 10, 2017. He further argues that there was insufficient evidence of misuse of a credit card as the video recording and pictures taken from Target do not clearly show that he was the individual who used Bruce's credit card. He contends that "[t]here are too many strands that need to be connected" to prove that he used "a certain form of payment at a particular moment at Target."

{¶ 52} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 53} Appellant was convicted of theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the

consent of the owner or person authorized to give consent." When the property involved is a credit card, the offense is a felony of the fifth degree. R.C. 2913.71(A). Appellant was also convicted of misuse of a credit card in violation of R.C. 2913.21(B)(2), which provides that "[n]o person, with purpose to defraud, shall * * * [o]btain property or services by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card expired or has been revoked, or was obtained, is retained, or is being used in violation of law." Where the victim of the offense is an elderly person, the offense is a felony of the fifth degree. R.C. 2913.21(D)(4). An "elderly person" is anyone who is 65 years old or older. R.C. 2913.01(CC).

{¶ 54} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Furthermore, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

{¶ 55} After viewing the evidence in the light most favorable to the prosecution we find that the jury, as a rational trier of fact, could have found all the essential elements of the theft and misuse of a credit card offenses proven beyond a reasonable doubt. Testimony from the victim and the victim's wife established that Bruce carried his Chase credit card in his wallet and that he had his wallet on him on October 10, 2017 when he went to the Eastgate Planet Fitness.[1] Bruce testified that he locked his wallet in a locker using a combination lock before going to work out. Bruce's locker was broken into, his

---

1. Appellant attacks the credibility of Bruce's memory of carrying his wallet into Planet Fitness on October 10, 2017, arguing that the wallet may not have been stolen as Bruce "could not state with certainty [that] he brought his wallet to Planet Fitness." "When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and 'defer to the trier of fact on questions of credibility and the weight assigned to the evidence.'" *State v. Helton*, 12th Dist. Warren No. CA2018-12-141, 2019-Ohio-4399, ¶ 16, quoting *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132. The jury, acting as the trier of fact, clearly found Bruce's and Dee's testimony that Bruce had his wallet in his pants pocket on October 10, 2017 credible and we will not second-guess their determination.

wallet and credit card stolen, and his Chase credit card used to purchase items at Target. Bruce testified that the lock that had been hanging on his locker at Planet Fitness contained scratches on it that were not previously there, leading to a reasonable inference that the scratches occurred when the lock was broken or picked.

{¶ 56} Bruce did not consent to his wallet being taken or his Chase credit card being used at Target. Despite this, video evidence taken from Target showed appellant using Bruce's credit card to make three separate purchases and an attempted fourth purchase on October 10, 2017, all within minutes of one another. Among the items appellant purchased were $400 in gift cards, a PS4 gaming console and game, and two Xbox-1 games. Appellant's attempt to purchase an additional $250 in gift cards in a fourth transaction was unsuccessful. Appellant was captured on video exiting the Target store shortly after the fraudulent transactions had been made.

{¶ 57} Still photographs pulled from Target's surveillance recording were matched to appellant's Planet Fitness membership photograph. Testimony from a regional manager at Planet Fitness indicated that a Planet Fitness member must swipe a membership card when entering a facility, and when the member swipes his card, the member's photo pops up on the gym computer screen so that a gym employee can make sure the photo is a match to the individual using the membership card. Appellant's membership login history showed that he had signed into the Eastgate Planet Fitness location at 1:32 p.m., less than 20 minutes before Bruce had signed into the gym. Appellant's login history also indicated that he consistently visited different Planet Fitness locations in the Greater Cincinnati area and that the Eastgate location was the second gym he visited that day. Less than two hours before logging in at the Eastgate location, appellant had logged in at the Norwood Planet Fitness. According to the Planet Fitness regional manager, appellant's login activity was abnormal as most gym members do not "bounce round so much" between branch locations

and do not have multiple check-ins in one day at different locations.

{¶ 58} Testimony from Officer Vestring about appellant's 2009 offenses showed that breaking into lockers in a gym while the victim is working out was appellant's known modus operandi. In 2009, appellant used an aluminum tool to assist in breaking the locks to the gym's lockers. Officer Vestring's testimony also revealed that using the stolen credit cards to purchase gift cards from stores like Target and Meijer was also appellant's known modus operandi.

{¶ 59} Viewing the aforementioned testimony and evidence in a light most favorable to the state, we conclude that the state presented sufficient evidence that appellant committed theft and misuse of a credit card of an elderly person. Contrary to appellant's assertions, the state presented evidence of appellant's identity as the perpetrator of the offenses. Appellant's third assignment of error is, therefore, overruled.

{¶ 60} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.