OPINION
{¶ 1} Defendant-appellant, Gregory Mouser, appeals his conviction by the Clinton County Court of Common Pleas for the crime of deception to obtain a dangerous drug. We affirm the conviction for the reasons outlined below.
 {¶ 2} Appellant reportedly suffers from and receives treatment for chronic pancreatitis. Appellant was indicted for deception to obtain a dangerous drug under R.C. 2925.22(A) in connection with an incident in which he visited Dr. Mark Henson in Clinton County and obtained a prescription for Oxycontin, a Schedule II controlled substance.
 {¶ 3} Dr. Henson testified at trial that appellant came to his office on March 27, 2002, which was appellant's first visit to him. Dr. Henson testified about the medical history provided by appellant and the fact that he prescribed Oxycontin to appellant for his described pain.
 {¶ 4} That same day, appellant entered a pharmacy and attempted to have filled a prescription for Percodan that was written by a physician at Mercy Hospital on the previous day. The pharmacy did not have the Percodan available and appellant was turned away. Approximately two hours later, appellant appeared at the same pharmacy with a prescription for Oxycotin, written by Dr. Henson. The pharmacist, Mark Kratzer, called Dr. Henson's office and law enforcement concerning the matter. Appellant was subsequently indicted on the charge of deception to obtain a dangerous drug.
 {¶ 5} Appellant was found guilty of the charge in a trial to the bench and sentenced accordingly. Appellant appeals his conviction, setting forth two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "The trial court erred to the prejudice of defendant-appellant when it allowed the treating physician of mouser to testify in violation of the statutory privilege properly raised on behalf of mouser prior to said testimony[.]"
 {¶ 8} Appellant argues that Dr. Henson should not have been permitted to testify because appellant did not waive his physician-patient privilege as described in R.C. 2317.02(B). Appellant filed a motion in limine on the privilege issue. The motion was denied by the trial court before trial and the evidence was admitted over his objection at trial.
 {¶ 9} R.C. 2317.02(B), states, in part, that a physician shall not testify concerning communication made to the physician by a patient in that relation or the physician's advice to a patient, except under certain exceptions. Communication is defined in the statue as "acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician to diagnose, treat, prescribe, or act for a patient." A communication may include, but is not limited to, "any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis." R.C.2317.02(B)(5)(a).
 {¶ 10} The parties do not assert that an exception listed in R.C. 2317.02 applies to the facts of this case. The state argues instead that a physician-patient privilege did not apply because a physician-patient relationship was not established or did not exist when appellant allegedly lied to or mislead the physician to obtain the drugs.
 {¶ 11} In permitting Dr. Henson to testify, the trial court relied upon the case of State v. Spencer (1998),126 Ohio App.3d 335. The Spencer court stated that the physician-patient privilege attaches to communications made relating to the medical treatment of the patient, but where the communication purports a fraud or other criminal activity, the "relationship" is not established and the privilege does not attach. Spencer at 338-339, relying inferentially on State v. Garrett (1983),8 Ohio App.3d 244.
 {¶ 12} If a defendant lies to a physician about whether another physician was prescribing controlled drug medications for him, that statement would not be considered a communication under the statute. State v. Desper, 151 Ohio App.3d 208,2002-Ohio-7176, at ¶ 47, appeal not allowed, 98 Ohio St.3d 1540,2003-Ohio-1946.
 {¶ 13} A lie is not necessary to enable a physician to diagnose, treat, prescribe, or act for the patient, and in fact, might actually hinder the physician's ability to treat the patient. Id. Therefore, untruthful communications are not protected under the physician-patient privilege. Id.
 {¶ 14} The physician-patient privilege only attaches to communications that are made within the physician-patient relationship. State ex rel. Buchman v. Stokes (1987),36 Ohio App.3d 109, 110. If the communication by the patient is fraudulent, the relationship is not established and the privilege does not attach. Id.; see State v. Jackson, Cuyahoga App. No. 80051, 2002-Ohio-2746, at ¶ 31 (citing Spencer for the proposition that permitting a claim of physician-patient privilege where there is reasonable articulable evidence supporting a suspicion of criminality would work a fraud upon the court).
 {¶ 15} A trial court's determination of whether to admit or exclude relevant evidence will not be reversed on appeal absent an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 180. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 16} The state presented evidence to the trial court that appellant had received a prescription for Percodan which he did not reveal to Dr. Henson, and that he left blank the line on the intake form that indicated appellant's previous physicians.
 {¶ 17} After reviewing the record in this case, we cannot say that the trial court abused its discretion in admitting Dr. Henson's testimony. Appellant's first assignment of error is overruled.
 {¶ 18} Assignment of Error No. 2:
 {¶ 19} "The finding of guilty below was against the manifest weight of the evidence."
 {¶ 20} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of syllabus.
 {¶ 21} As we previously mentioned, the state presented testimony from pharmacist Kratzer that appellant attempted to have two prescriptions for dangerous drugs, which were written by two separate physicians, filled on the same day.
 {¶ 22} The state's case included testimony from the investigating detective that appellant told him that he suffered from pancreatitis and the after affects of a gunshot wound suffered as an adolescent. As a result of these medical issues, appellant was prescribed numerous medications by a psychiatrist, as well as pain medications from treating physicians. Testimony was presented that appellant told the officer that he was given morphine during past hospitalizations and had developed an addiction to pain medications.
 {¶ 23} According to the officer, appellant acknowledged that he did not tell his family physician, Dr. Bankston, that his pancreatic specialist, Dr. Martin, was also prescribing pain medication. The officer testified that appellant said Dr. Bankston did not need to know because appellant was not going to see the specialist for some time.
 {¶ 24} Appellant indicated on cross-examination that he had obtained a month's supply of another pain medication, Methadose, from his pancreatic specialist on March 6, 2002. He also indicated that he had obtained another prescription for Methadose from Dr. Bankston on March 15, 2002, but some time later, Dr. Bankston "dropped" him as a patient after police contacted her office.
 {¶ 25} Appellant also acknowledged that a prescription for the pain medication described as "Hydracodone A-Pack for 10 pills" was written by a Dr. Harkins[1] and filled for appellant by another pharmacy on March 26, 2002. Appellant testified that he was given two Percodan and the previously mentioned prescription for Percodan at Mercy Hospital the day before he saw Dr. Henson on March 27, 2002. Appellant testified that Percodan was not working for him, but that he had the prescription filled because it was "the only thing I had at the time."
 {¶ 26} Dr. Henson testified that he personally took a medical history from appellant at the March 27 office visit, and that he recalled that appellant had left blank a section on Henson's intake form that requested the names of previous physicians. Dr. Henson indicated that appellant told him that he was running out of several medications, but had not mentioned that he was given a prescription for Percodan the previous day. Dr. Henson testified that he would not have prescribed the Oxycontin on that day if he had known about the Percodan prescribed the day before.
 {¶ 27} Appellant, on the other hand, testified that he disclosed his full medical history to Dr. Henson and signed a release for information. Appellant testified that he told Dr. Henson about the Percodan and that the drug was not working for him. Appellant also presented evidence that the Percodan prescription involved a supply of less than two days if taken every four to six hours.
 {¶ 28} We have thoroughly reviewed the record before us for purposes of this assignment of error. We cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 29} To the extent that appellant's second assignment of error can be construed by his argument to attack the conviction on the sufficiency of the evidence, we will address this contention.[2]
 {¶ 30} In resolving the sufficiency of the evidence argument, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of syllabus.
 {¶ 31} R.C. 2925.22(A) states, in relevant part, that no person, by deception, as defined in R.C. 2913.01, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug.
 {¶ 32} R.C. 2913.01(A) defines "deception," as knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.
 {¶ 33} After reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime of knowingly obtaining by deception the administration of or prescription for, or dispensing of a dangerous drug beyond a reasonable doubt. Appellant's second assignment of error is overruled.
 {¶ 34} The judgment is affirmed.
Judgment affirmed.
Young, P.J., and Walsh, J., concur.
[1] Appellant indicated that he believed that Dr. Harkin may be another associate of Dr. Martin.
[2] Appellant failed to support with legal authority the assertion that there was insufficient evidence to sustain the conviction, per App.R. 16.