[Cite as *State v. Schenck*, 2022-Ohio-430.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

|                          |     |                              |
| ------------------------ | --- | ---------------------------- |
| STATE OF OHIO,           | :   |                              |
| Appellee,                | :   | CASE NO. CA2021-02-003       |
|                          | :   | O P I N I O N                |
| - vs -                   |     | 2/14/2022                    |
|                          | :   |                              |
| JAMES A. SCHENCK, JR.,   | :   |                              |
| Appellant.               | :   |                              |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 19CR013015

Martin P. Votel, Preble County Prosecuting Attorney, and Gractia S. Manning, Assistant Prosecuting Attorney, for appellee.

James B. Vanzant, for appellant.

**BYRNE, J.**

{¶1}    Appellant, James Schenck, appeals his conviction in the Preble County Court of Common Pleas for gross sexual imposition.  For the reasons outlined below, we affirm.

**I. Factual Background**

{¶2}    In the summer of 2016 or 2017, N.W. and her younger sister ("Sister") stayed the night at the home of Schenck and his wife ("Schenck's Wife").  At the time, N.W.'s father

("Father") was in a relationship with Schenck Wife's daughter ("Father's Girlfriend"). Schenck and Schenck's Wife acted as surrogate grandparents to the two girls. N.W. was seven or eight years old.

{¶3} The night of the incident, Schenck and Schenck's Wife set up a tent and built a fire in their backyard for the girls to "camp out." N.W. and Sister went to sleep in the tent. N.W. testified that she woke to find Schenck lying beside her in the tent. According to N.W., Schenck put his hand under her shirt as well as inside her underwear, touching her vagina. N.W. pretended to be asleep because she did not know what to do. N.W. testified that when Schenck left the tent, N.W. went inside the house, where she saw Schenck's Wife watching television in the living room. She did not tell anyone what had happened.

{¶4} Sometime after the incident, Father, Father's Girlfriend, their baby, Sister, and N.W. moved in with Schenck and Schenck's Wife. In early November 2018, after several months of living in Schenck's home, N.W. told Father's Girlfriend about the incident on the night of the campout. Father's Girlfriend told Father, then Schenck's Wife. Father and Father's Girlfriend then told N.W.'s mother ("Mother"). On November 12, 2018, Mother contacted Deputy Andrew Forrer of the Preble County Sheriff's Office to report the offense. Deputy Forrer investigated the incident, then forwarded his report to Children's Services for a forensic interview with N.W., and to Detective Shane Hatfield of the Preble County Sheriff's Office for further investigation.

{¶5} On November 27, 2018, Emily Harmon, a social worker at the Mayerson Center for Safe and Healthy Children, conducted a forensic interview with N.W. During the interview, N.W. disclosed that Schenck would make remarks about her being naked, including telling her "I bet you look pretty, naked." N.W. stated that "one day when we went camping in the backyard, [Schenck] touched my private part." N.W. indicated on a drawing that her "private part" was her vagina. She further told Harmon that Schenck "rubbed [her

vagina] on the outside then on the inside." N.W. additionally disclosed a separate incident where Schenck exposed his genitals to her.

{¶6} On June 4, 2019, Schenck was indicted for one count of rape and one count of gross sexual imposition by a Preble County grand jury. The matter proceeded to a bench trial on August 27, 2020. At trial, Father, Father's Girlfriend, Schenck's Wife, Deputy Forrer, Detective Hatfield, Harmon, N.W., and Schenck all testified. N.W. testified as outlined above. We will address the testimony of other witnesses below as relevant to Schenck's assignments of error. The video of Harmon's forensic interview with N.W. was also admitted into evidence at trial.

{¶7} The trial court found Schenck guilty of gross sexual imposition in violation of R.C. 2907.05(B) but not guilty of rape. Before sentencing, Schenck's counsel submitted a sentencing memorandum arguing for community control rather than incarceration for his client. Schenck was sentenced to a prison term. He was also informed that he would be required to register as a Tier III sex offender.

{¶8} Schenck now appeals his conviction, raising two assignments of error.

## II. Law and Analysis

{¶9} Assignment of Error No. 1:

{¶10} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29 AND BY THEREAFTER FINDING APPELLANT GUILTY BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A GUILTY VERDICT ON EITHER CHARGE.

{¶11} In his first assignment of error, Schenck argues that the trial court erred by denying his Crim.R. 29 motion for acquittal because his conviction was not supported by sufficient evidence. However, virtually all of Schenck's argument in support of his first assignment of error relates not to the sufficiency of the evidence or Crim.R. 29, but instead

suggests that the verdict was against the manifest weight of the evidence. Because Schenck so clearly presents a manifest weight argument, we will address Schenck's manifest weight argument alongside his Crim.R. 29 sufficiency argument.[1]

{¶12} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency of the evidence claim. *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 15.

{¶13} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Ostermeyer*, 12th Dist. Fayette No. CA2021-01-002, 2021-Ohio-3781, ¶ 33. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22. In other words, the test for sufficiency requires a determination as to whether the state has met its burden of production at trial. *Lee* at ¶ 16, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34.

{¶14} Conversely, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side

---

1. This court rules on assignments of error and generally does not address arguments unrelated to assignments of error. *State v. Lee*, 10th Dist. Franklin No. 17AP-908, 2018-Ohio-3957, ¶ 46. However, when we determine it is appropriate to do so, we may construe an assignment of error as raising a manifest weight or sufficiency of the evidence challenge. *See, e.g., State v. Dinka*, 12th Dist. Warren No. CA2014-01-002, 2015-Ohio-63, ¶ 9; *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 10; *State v. Mouser*, 12th Dist. Clinton No. 2003-05-013, 2004-Ohio-2295, ¶ 28-29. We choose to do so here.

of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.  *State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 13.

{¶15}  In reviewing a manifest weight challenge, an appellate court "'must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given the evidence.'"  *State v. Hensley*, 12th Dist. Butler No. CA2021-04-040, 2021-Ohio-3702, ¶ 23, quoting *State v. Hilton*, 12th Dist. Butler No. CA2015-03-064, 2015-Ohio-5198, ¶ 18.  Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal.  *Miller* at ¶ 14.  "A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency."  *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 15.

{¶16}  The statute prohibiting gross sexual imposition provides that,

> No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

R.C. 2907.05(B).  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that

such circumstances probably exist."  R.C. 2901.22.

{¶17}  Schenck argues his conviction for gross sexual imposition was against the manifest weight of the evidence—or was not supported by sufficient evidence—because N.W.'s testimony was not credible, was inconsistent, and was contradicted by the testimony of other witnesses.  Essentially the same argument was made in *State v. Cephas*, 12th Dist. Butler No. CA2021-05-051, 2021-Ohio-4356.  In that case, the defendant appealed her conviction for violation of a civil stalking protection order, arguing that the conviction was against the manifest weight of the evidence.  *Id.* at ¶ 1, 7-9.  Specifically, the defendant "challenge[d] the trial court's decision on the basis of three issues, all related to witness testimony:  inconsistencies, credibility, and conflicts."  *Id.* at ¶ 13.  These are the same three grounds on which Schenck bases his manifest weight argument.

{¶18}  In *Cephas*, we rejected the defendant's argument and overruled her appeal, noting that "'[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'"  *Id.* at ¶ 13, quoting *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 34.  We further noted that "'it is well-established that determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact.'"  *Cephas* at ¶ 13, quoting *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 26.  The same analysis applies here.

{¶19}  Schenck argues that N.W. was inconsistent in her testimony.  In particular, Schenck points out that N.W. testified that she was unable to recall whether the tent was zipped closed after N.W. and Sister entered the tent, but she also testified that Schenck unzipped the tent in order to come inside.  Even if there was a minor inconsistency in N.W.'s testimony, a trial court "take[s] note of any inconsistencies in the witness' testimony and resolve[s] them accordingly, believing all, part, or none of each witness's testimony."  *State*

*v. Schils*, 12th Dist. Clermont No. CA2019-08-067, 2020-Ohio-2883, ¶ 18. "[I]nconsistencies in the evidence alone do not mean that a decision is against the manifest weight of the evidence." *State v. Deck*, 12th Dist. Warren No. CA2020-10-066, 2021-Ohio-3145, ¶ 21. Such a minor inconsistency in N.W.'s testimony does not require that the trial court's verdict be reversed.

{¶20} Schenck argues that N.W.'s testimony was contradicted by other witnesses on a number of points:

- N.W. testified that Father's Girlfriend was pregnant at the time of the campout, but Father's Girlfriend testified that the campout happened the previous year, before she was pregnant.

- N.W. testified that Father, Father's Girlfriend, Sister, and N.W. moved in with Schenck and Schenck's Wife only months after the campout, but Schenck's Wife testified that they moved in a year after the campout.

- N.W. testified that Schenck entered the tent before he touched her, but Schenck and Schenck's Wife both testified that Schenck never entered the tent. Schenck's Wife further testified that she and Schenck were in sight of each other almost the entire night with the exception of the times Schenck would go to the woods to collect firewood, during which times Schenck's Wife remained at the tent, meaning Schenck could not have entered the tent without Schenck's Wife observing.

- N.W. testified that Schenck went to feed his chickens immediately after he assaulted her, but Schenck testified that he did not feed the chickens that night because he feeds the chickens in the afternoon each day. Schenck's Wife testified that he feeds the chickens in the evening.

- N.W. testified that shortly after the assault she went into the house and that she found Schenck's Wife in the living room watching television, but Schenck's Wife testified that N.W., Sister, Schenck, and Schenck's Wife were outside (sleeping in the tent in the case of the children, and sitting in chairs near the tent in the case of the adults) until 5:00 a.m. or 6:00 a.m., and that no one ever went inside until Schenck's Wife woke the children and took them inside.

{¶21} "When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *see also State v. Jackson*, 12th Dist. Butler No. CA2001-10-239, 2002-Ohio-4705, ¶ 48 ("A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact"). "'In a bench trial, the trial court acts as the factfinder and determines both the credibility of the witnesses and the weight of the evidence.'" *Hensley*, 2021-Ohio-3702, at ¶ 29, quoting *State v. Lowry*, 12th Dist. Warren Nos. CA2019-07-070 and CA2019-07-071, 2020-Ohio-1554, ¶ 19. "'The trial court, as the trier of fact, is free to believe all, part, or none of the testimony of any witness who appears before it.'" *State v. Worship*, 12th Dist. Warren No. CA2020-09-055, 2022-Ohio-52, ¶ 37, quoting *Cephas*, 2021-Ohio-4356, at ¶ 13.

{¶22} Here, the trial court, as factfinder, noted before announcing its verdict that testimony was offered by Schenck's witnesses that contradicted N.W.'s testimony. The trial court determined that N.W. was credible and Schenck and Schenck's Wife were not credible. The trial court made this explicit, stating, "I found [N.W.'s] testimony regarding the crucial facts of this case to be credible." The trial court also specifically noted that N.W. had been consistent over time in her recitation of what happened on the night of the incident. With respect to Schenck's Wife's claim that she sat by the tent the entire evening, never even going to the bathroom, the court stated, "I did not find that testimony to be credible."[2] We agree with the trial court's assessment on each of these points, and we find that certain

2. In fact, prior to announcing its verdict the trial court devoted significant attention to explaining various factual discrepancies and issues in N.W.'s and other witnesses' testimony and the standards applicable to evaluation of testimony, efforts it devoted to analyzing the testimony, factors it considered important in evaluating N.W.'s testimony, and its conclusions.

other minor inconsistencies raised by Schenck, such as whether or not Schenck fed the chickens after he assaulted N.W., do not undermine N.W.'s consistent testimony on the essential points and do not require reversal.

{¶23} Finally, Schenck argues that N.W. was not credible when she testified that she knew it was Schenck who entered the tent, because she also admitted that it was night and there were no lights in or around the tent, that she was not wearing her corrective lenses, and that she could not identify Schenck's voice because he never spoke. As we have already explained, it is up to the trial court to evaluate each witness' credibility, and the trial court did so, finding N.W. to be credible. We agree, and we conclude that even if it was dark and Schenck did not speak, it is not unreasonable to believe that N.W. was able to identify Schenck—the only male present, and a man who she knew as a grandfather figure—in the dark.

{¶24} "When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt." *State v. Tranovich*, 12th Dist. Butler No. CA2008-09-242, 2009-Ohio-2338, ¶ 7. Having reviewed the record, weighed inferences, and examined the credibility of the witnesses, we find that Schenck's conviction was not against the manifest weight of the evidence. N.W.'s recollection of the key events was credible and consistent. In finding Schenck guilty of gross sexual imposition and in making its decisions regarding which witnesses to believe, the trial court did not lose its way or create a manifest miscarriage of justice.

{¶25} Having found that the trial court's verdict was not against the manifest weight of the evidence, we also find that Schenck's challenge to the sufficiency of the evidence is without merit. *Billingsley*, 2020-Ohio-2673 at ¶ 15 ("A determination that a conviction is

supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency"). Schenck's first assignment of error is consequently without merit and is therefore overruled.

{¶26} Assignment of Error No. 2:

{¶27} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHT TO COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

{¶28} In his second assignment of error, Schenck argues that he received ineffective assistance of counsel because his trial counsel failed to timely object to hearsay testimony, failed to subpoena the author of a report, rendering the report inadmissible, and failed to "make a more forceful argument" for a sentence of community control.

{¶29} "In order to prevail on an ineffective assistance of counsel claim, an appellant must establish that (1) his trial counsel's performance was deficient and (2) such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Holtman*, 12th Dist. Clermont No. CA2018-11-078, 2019-Ohio-3052, ¶ 14, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). The failure to satisfy either the deficiency prong or the prejudice prong of the test is fatal to a claim of ineffective assistance of counsel. *State v. Brewer*, 12th Dist. Brown No. CA2020-11-008, 2021-Ohio-2289, ¶ 7. "'[T]rial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.'" *Id.*, quoting *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197, ¶ 49.

{¶30} With regard to the deficient performance prong, Schenck must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland* at 688. Conversely, to show prejudice, Schenck must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Strickland* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice inquiry thus focuses not only on outcome determination, but also on "'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 82, quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838 (1993).

{¶31} A defendant alleging ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Montgomery* at ¶ 86, quoting *Strickland* at 690. Schenck points to three instances where he asserts trial counsel's performance was not reasonable and Schenck was prejudiced as a result. We will address each in turn.

## A. Failure to Object to Admission of Hearsay Testimony

{¶32} At trial, the state called Deputy Forrer to testify about his investigation of Schenck. The following exchange occurred very early in the deputy's testimony:

> [Assistant Prosecutor:] All right. And what did you learn from [Mother] about what she knew at that point—
>
> [Assistant Prosecutor]: It's not offered for the truth, Your Honor.
>
> [Deputy Forrer:] She stated that [N.W.] reported to her that over a year ago which at a camp out at her step-grandfather's house, which would be the defendant, James Schenck, the alleged defendant touched her private parts and when she mentioned this to [Mother], she looked down at her vagina, but did not visually- er, verbally say it was her vagina. [Mother] said that she was advised of this and that [N.W.'s father] was also aware of this allegation and that the suspect knew about it as well.

The state argues that Schenck's counsel objected to the prosecutor's question, but that the court reporter accidentally omitted the objection from the transcript. The state argues that the objection was what caused the prosecutor to stop mid-sentence and then state, ostensibly in response to the objection, "It's not offered for the truth, Your Honor." Schenck disagrees with the state's characterization and argues that his trial counsel did not object at

this time. It is unclear whether the state or Schenck is correct. The transcript does not reflect any objection by Schenck's counsel, nor does it reflect that any response or ruling was made by the trial court. The state simply continued its examination of the deputy. Neither party has, pursuant to App.R. 9(E), submitted a statement to correct the possible omission from the transcript. Rather than speculate on this point, we will proceed under the assumption that the transcript reflects the exchange as it occurred—that is, we will assume that Schenck's trial counsel did *not* object to the prosecutor's first question about the deputy's conversation with Mother.

{¶33} The deputy answered the prosecutor's question, describing what Mother told him about what N.W. told her about the incident. The deputy also testified that he subsequently called Father, then Father's Girlfriend. The deputy first explained that Father's Girlfriend described the circumstances in which N.W. approached her about the incident. The deputy then began to describe what Father's Girlfriend told him N.W. had said to her about the incident, but Schenck's counsel objected in the middle of the deputy's sentence. At this point the state asserted that Deputy Forrer's testimony was not hearsay because it was not offered to prove the truth of the matter asserted, but was instead "offered to show how this investigation got started and where it went from there." The trial court responded, "Well, I think it's gone farther than what it needs to, we could truncate this testimony if it'd make that – to get you where you need to go * * * without all the detail." The state agreed and asked four further questions about the deputy's investigation, receiving a one sentence answer to each.

{¶34} Schenck argues that his trial counsel was ineffective because he failed to object to impermissible hearsay testimony when Deputy Forrer testified to the contents of his discussions. Schenck asserts that as soon as the state's line of questioning became clear, Schenck's trial counsel should have objected on hearsay grounds. As mentioned

above, the state asserts that Schenck's trial counsel did in fact object at that time but that his objection was accidentally omitted from the trial transcript. We assume Schenck's characterization is correct.

{¶35} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible unless it falls within one of the permissible hearsay exceptions. Evid.R. 802.

{¶36} Schenck claims that trial counsel violated an essential duty by failing to object to hearsay testimony. However, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103. Further, "[l]aw-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." State v. Beasley, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 172. Here, however, we need not decide whether Deputy Forrer's testimony constituted hearsay or whether counsel's decision to briefly delay objecting to the state's line of questioning was reasonable, as Schenck cannot establish that he was prejudiced. State v. Spradlin, 12th Dist. Clermont No. CA2016-05-026, 2017-Ohio-630, ¶ 89; see State v. Green, 12th Dist. Clermont No. CA2019-07-061, 2020-Ohio-1552, ¶ 37 ("An appellant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other.").

{¶37} In view of the evidence as a whole, the relevant portion of Deputy Forrer's testimony took up less than two pages of the trial transcript, in part described the circumstances of his conversations with other witnesses, and in part was duplicative of N.W.'s testimony when she testified that Schenck was the perpetrator. See In re Davis, 12th Dist. Butler No. CA94-03-066, 1994 WL 580225 at *1 (Oct. 24, 1994) (overruling assignment of error claiming ineffective assistance of counsel based on failure to object to

hearsay testimony when the testimony "was cumulative and merely substantiated the testimony of [another witness]" and such testimony did not prejudice the defendant). To the extent that Deputy Forrer's testimony went "beyond explaining the next step in his investigation and impermissibly 'connect[ed] the accused with the crime charged,'" we find that trial counsel's failure to object to the putative hearsay statements was not prejudicial to Schenck's right to a fair trial in the circumstances as such evidence was merely cumulative to other evidence presented at trial. *Holtman*, 2019-Ohio-3052, at ¶ 18. As such, counsel's failure to object does not amount to ineffective assistance of counsel.

### B. Failure to Subpoena a Witness

{¶38} At trial, Schenck's trial counsel attempted to introduce into evidence a mental health assessment of N.W. He first attempted to do so during the testimony of Detective Hatfield, who testified that he did not recall the document, but that Schenck's Wife had attempted to give it to him when he interviewed her. Schenck's trial counsel next attempted to introduce the assessment during the testimony of Schenck's Wife. Both times, the state objected, and the trial court ultimately sustained the objections. The assessment was not entered into evidence because Schenck's trial counsel did not subpoena its author, thus rendering it inadmissible hearsay.

{¶39} Schenck now claims that he was denied effective assistance because his trial counsel failed to subpoena the document's author. Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. *State v. Ray*, 12th Dist. Butler No. CA2006-05-115, 2007-Ohio-2291, ¶ 30. It is "well-settled in Ohio law that 'debatable trial tactics do not establish ineffective assistance of counsel.'" *State v. Byrd*, 12th Dist. Warren No. CA2008-10-124, 2009-Ohio-1722, ¶ 29, quoting *Conway*, 2006-Ohio-2815, at ¶ 101. Further, it is the longstanding precedent of this court that, "[t]he mere failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential

duty absent a showing of prejudice." *State v. Smith*, 12th Dist. Fayette No. CA20060-08-030, 2009-Ohio-197, ¶ 54.

{¶40} An appellant has the burden of establishing that the testimony of witnesses not subpoenaed would have significantly assisted the defense and affected the outcome of the case. *State v. Wells*, 12th Dist. Warren No. CA2005-04-050, 2006-Ohio-874, ¶ 12. Here, Schenck has not shown how the report would have assisted his defense. Instead, he states in his brief that,

> Whatever value this report would have had for Appellant's case at trial will forever go unknown because the report was never allowed into evidence. This could have been avoided had Appellant's trial counsel subpoenaed the author of the report to testify about it and thereby get it placed into evidence.

{¶41} Schenck offers mere speculation and conjecture. "Speculation alone is insufficient to find error on behalf of trial counsel." *Id.* at ¶ 14; *see also State v. Johnson*, 5th Dist. Delaware No. 12 CAA 11 0081, 2014-Ohio-657, ¶ 40 ("[W]e will not find counsel was ineffective based upon speculation; even if the exhibit was admitted, there is no reason to believe, nor does appellant argue, the outcome of the trial would have been different"). Consequently, we find that Schenck's argument is without merit.

### C. Argument for Community Control

{¶42} Schenck argues that his trial counsel provided ineffective assistance of counsel because he did not make "a significant effort" to persuade the trial judge to impose a sentence of community control sanctions rather than a prison term. Gross sexual imposition committed in violation of R.C. 2907.05(B) is a third-degree felony and carries "a presumption that a prison term shall be imposed for the offense." R.C. 2907.05(C)(2). However, the trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in [R.C.] 2929.11." R.C. 2929.12(A). This includes discretion to determine that the presumption that a prison term shall be

imposed has been rebutted. Schenck argues that his trial counsel's failure to make "a more forceful argument for community control" constituted ineffective assistance of counsel.

{¶43} On February 2, 2021, Schenck's trial counsel submitted a one-page sentencing memorandum to the trial court. In it, counsel listed the reasons why the trial court should grant Schenck's request for community control sanctions rather than impose the presumptive prison sentence:

> This conviction represents a first lifetime conviction for Mr. Schenck, both felony and misdemeanor. Mr. Schenck has led a law-abiding life for his fifty-two years. The victim in this matter does not reside near Mr. Schenck. There is no real concern for their future contact. Mr. Schenck has been compliant with all court orders throughout the entire trial process. Mr. Schenck poses no risk to the community. Mr. Schenck has been compliant with the evaluation with Dr. Delong and could follow through with those recommendations. It is respectfully requested that Mr. Schenck receive community control sanctions in this matter with whatever requirements the Court deems necessary.

{¶44} At the sentencing hearing the same day, the trial court acknowledged receipt of Schenck's sentencing memorandum and addressed Schenck's trial counsel:

> [Trial Court]: Mr. Lennen, I received your sentencing memoranda and have reviewed that, anything you'd like to add to that?
>
> [Trial Counsel]: No, Your Honor, we've incorporated everything into that sentencing memorandum. Thank you.

Schenck contends that his trial counsel's failure to say anything further on his behalf at sentencing constituted ineffective assistance of counsel. But Schenck does not point to any specific arguments that his trial counsel could have made beyond those included in the sentencing memorandum and does not demonstrate that any such hypothetical arguments would have changed the outcome of the sentencing hearing.

{¶45} The trial court is required at the time of sentencing, to "[a]fford counsel an opportunity to speak on behalf of the defendant." Crim.R. 32(A)(1). "The manner in which

- 16 -

defense counsel can 'speak' on sentencing matters is undefined and left to the judgment of defense counsel as a matter of strategy." *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 4. This includes the decision to submit a sentencing memorandum. *Id.* Here, Schenck's trial counsel submitted an articulate sentencing memorandum detailing factors in support of community control sanctions for Schenck. When asked at the sentencing hearing whether he would like to add anything, Schenck's trial counsel noted that all of his arguments on the matter were "incorporated" into the memorandum. The decision to proceed in this way was a matter of strategy. "It is not an appellate court's role to second-guess trial strategy decisions." *State v. Adkins*, 12th Dist. Fayette No. CA2019-03-004, 2020-Ohio-535, ¶ 19. As such, Schenck's ineffective assistance argument is without merit.

{¶46} Schenck has not shown that his trial counsel's representation fell below an objective standard of reasonableness when he failed to offer an argument at the sentencing hearing beyond the argument he had already submitted to the court in the sentencing memorandum. Schenck therefore has not met the deficient performance prong of the *Strickland* test.

{¶47} Schenck's claim of ineffective assistance of counsel is without merit. Accordingly, Schenck's second assignment of error is overruled.

### III. Conclusion

{¶48} For all of the foregoing reasons, we overrule both of Schenck's assignments of error and affirm Schenck's conviction.

{¶49} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.