**[Cite as *State v. Said*, 2024-Ohio-277.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 22CR45 |
| | : | |
| SELEMANI A. SAID | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 26, 2024

. . . . . . . . . . .

THOMAS G. EAGLE, Attorney for Appellant

PAUL M. WATKINS, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant Selemani A. Said appeals from his conviction in the Miami County Common Pleas Court of child endangering and domestic violence. For the reasons outlined below, we affirm the judgment of the trial court.

I.      **Factual and Procedural History**

{¶ 2} Said was indicted in March 2022 for child endangering and domestic violence. The allegations against Said arose from incidents involving his nine-year-old daughter, F.A. Although she was presumed to be a competent witness, the trial court conducted a hearing to determine the testimonial competency of F.A. and found her to be competent to testify. Said's counsel was present at F.A.'s competency hearing but Said was not; counsel made no request for Said to be present at the hearing and did not object to Said's absence or the trial court's determination that F.A. was competent to testify.

{¶ 3} The matter proceeded to a two-day jury trial in August 2022. At trial, the State offered the testimony of Angela Deeter, F.A., and Officer Kiersten Zimmerman. Said was the only witness to testify for the defense.

{¶ 4} According to F.A., on February 1, 2022, when she returned home from school, Said was angry and started yelling and cursing at her because he had seen a video of her linking arms with a boy at a birthday party. F.A. became scared and ran out of their apartment, screaming "help me." Said found F.A. on the second floor of the building and continued to yell at her and call her names. When she heard Said and F.A. arguing, Angela Deeter, who was their neighbor, confronted them, specifically asking them if they were arguing, to which Said replied, "No, I'm going to kill her." Deeter then phoned the Piqua Police Department to report that there was a young girl screaming in the hallway for help and that a male was dragging her and saying that he was going to kill her.

{¶ 5} Officer Zimmerman was dispatched to the residence and briefly spoke to Said, who reported that F.A. was in trouble for lying because she had linked arms with a

boy and, as a result, was in timeout. Said showed Officer Zimmerman to F.A.'s room, where F.A. was sitting on the floor, crying. Officer Zimmerman did not talk to F.A. at that time and left.

{¶ 6} Minutes later, Officer Zimmerman and another officer returned to the residence after Officer Zimmerman was flagged down while walking to her cruiser by two women who were concerned and appeared terrified. Upon returning to the residence, Said was agitated and denied Officer Zimmerman's request to speak to F.A. alone. Officer Zimmerman called her supervisor for assistance because of Said's aggressive behavior and refusal to permit officers to speak with F.A., and when a supervisor arrived, she detained Said in handcuffs while she conducted her investigation.

{¶ 7} During her investigation, Officer Zimmerman spoke privately with F.A. The conversation between Officer Zimmerman and F.A. was captured on the officer's body camera and was made part of the evidence at trial. Thus, the entire interaction between Officer Zimmerman and F.A., including F.A.'s demeanor and her physical condition at the time, were viewed by the jury on video. During their interaction, F.A. told Officer Zimmerman that Said was angry because of the video of her linking arms with a boy; Said threw his phone at her and hit her on her head. F.A. also provided further description of Said's actions toward her. Noticing marks on F.A.'s face, Officer Zimmerman asked F.A. about what appeared to be burn marks on her face. F.A. explained that the marks had resulted from a separate incident in which Said was angry with her. F.A. recounted that, on the day her face was injured resulting in the marks noticed by Officer Zimmerman, Said had used a belt to hit her on her back and then heated a knife over the stove and

placed the hot knife on her chin and cheek while his girlfriend restrained her, causing two burn marks to her face. At that time, Zimmerman took photographs of F.A.'s face. F.A. also told Zimmerman that Said had a gun under his mattress and that he had cut a person's neck during a separate incident in Columbus, possibly killing that person.

{¶ 8} Said was convicted on both counts in the indictment and was sentenced to serve an aggregate prison term of four to six years. This appeal followed.

## II.    Assignments of Error

{¶ 9} Said asserts the following assignments of error:

THE TRIAL COURT ERRED IN EXCLUDING APPELLANT FROM THE WITNESS COMPETENCY HEARING.

THE TRIAL COURT ERRED IN CONVICTING APPELLANT AFTER INEFFECTIVE ASSISTANCE OF COUNSEL.

THE TRIAL COURT ERRED IN SENTENCING APPELLANT UNDER THE REAGAN TOKES ACT.

{¶ 10} In his first assignment of error, Said contends that a criminal defendant is denied his rights to a fair trial and to due process of law when he is excluded from a witness competency hearing without cause. Said contends that the trial court erred by conducting F.A.'s witness competency hearing without Said present, specifically arguing that he was denied his fundamental right to be present at all critical stages of his criminal proceeding. We disagree.

{¶ 11} In general, every person is competent to be a witness. Evid.R. 601(A). However, Evid.R. 601(B) sets forth exceptions to this general rule, including that a person

is disqualified from testifying as a witness when the court determines that the person is incapable of expressing herself concerning the matter so as to be understood or is incapable of understanding the duty of a witness to tell the truth. Evid.R. 601(B)(1) and (2). When a trial court decides to ascertain the competency of a child, the court may conduct an examination of the child to determine the child's competence to testify. *See State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 100.

{¶ 12} In making a competency determination of a child, the trial court must consider "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful. *Id.*, citing *State v. Frazier,* 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991). A determination of competency is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Maxwell* at ¶ 100, citing *Frazier* at 250-251.

{¶ 13} Ordinarily, "[a]n accused has a fundamental right to be present at all critical stages of his criminal trial." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 139, citing Section 10, Article I, Ohio Constitution; Crim.R. 43(A). However, an accused's absence "does not necessarily result in prejudicial or constitutional error." *Id.* "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only.*" (Citation omitted.) *Id.*

{¶ 14} It is worth noting that, "under certain circumstances, a defendant's absence from a hearing at which his counsel are present does not offend due process." *United States v. Gagnon*, 470 U.S. 522, 527, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). Moreover, the U.S. Supreme Court found no due process or Confrontation Clause violation when an accused was excluded from a hearing on the competency of two child witnesses, concluding that a defendant's absence from a witness competency hearing is not a fatal error. *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987).

{¶ 15} At the outset, we note that Said made no request to be present at the witness competency hearing and Said's counsel did not object to Said's absence at the hearing. Under these circumstances, because no request to be present or objection was made with respect to Said's absence, "reversible error can only be in the nature of plain error." *State v. Waldo*, 2d Dist. Champaign No. 1999-CA-24, 2001 WL 1103330, *5 (Sept. 21, 2001).

{¶ 16} In *Waldo*, we considered an appellant's argument that he was denied his constitutional and statutory rights to be present during all stages of his trial following his absence from the in-chambers hearing conducted by the trial court to determine whether the child-victim was competent to testify at trial. In that case, we explained the following circumstances in which excluding a defendant from a hearing to determine a child's competency did not violate either the defendant's confrontation or due process rights:

The record demonstrates that Defendant's attorney was present during this hearing. No substantive questions relating to Defendant's guilt were asked of the child-victim during the hearing. Rather, the questions posed to the

child related to the child's ability to perceive, remember and relate facts, her ability to distinguish between the truth and a lie, and the child's sense of her obligation to tell the truth. When the child testified in court during the trial, Defendant was present with his counsel and able to consult with his counsel during cross-examination of the child.

*Id.*

{¶ 17} Like the court in *Waldo*, the trial court in this case held a hearing to determine if F.A., who was nine years old at the time, was competent to testify. The trial court judge initially asked F.A. how she was doing and then asked her to spell her name. The judge asked her questions regarding her birthday and family members and later asked her whether she knew the difference between right and wrong and between telling the truth and telling a lie. F.A. stated that telling the truth is good and that telling a lie is not good and has consequences. The judge asked F.A. several questions in an attempt to determine whether she understood the concept of telling the truth, ultimately deciding that F.A. was competent to testify as a witness.

{¶ 18} The circumstances here were similar to those described in *Waldo*. The record demonstrates that Said's attorney was present during the competency hearing and asked F.A. questions. No specific substantive questions relating to Said's guilt were asked of F.A. during the hearing. The questions posed to F.A. by the judge related to her ability to perceive, remember, and relate facts, her ability to distinguish between the truth and a lie, and her sense of her obligation to tell the truth. Additionally, when F.A. testified in court during the trial, Said was present with his counsel and able to consult with his

counsel during cross-examination of F.A.

{¶ 19} Under these circumstances, we cannot say that Said was denied a fundamental right to be present at F.A.'s competency hearing. Moreover, Said's trial counsel was present at the hearing, and, thus, we cannot say that a fair and just hearing was thwarted by Said's absence. And, finally, F.A. was presumed competent to be a witness pursuant to Evid.R. 601(A) in the first place. Therefore, we cannot say that excluding Said from the hearing to determine F.A.'s competency to testify violated his rights to a fair trial and due process. *See Waldo* at *5, citing *Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (no Due Process or Confrontation Clause violation when an accused was excluded from a hearing on the competency of two child witnesses); *State v. Green*, 90 Ohio St.3d 352, 738 N.E.2d 1208 (2000). Accordingly, we conclude that the trial court did not err in not having Said present at the witness competency hearing.

{¶ 20} Said's first assignment of error is overruled.

{¶ 21} In his second assignment of error, Said generally contends that a conviction is the result of ineffective assistance of counsel where trial counsel fails to oppose or object and injects arguments, facts, and evidence that are prejudicial, otherwise inadmissible, and to the defendant's detriment. Said further contends that cumulative errors of trial counsel, in combination, denied him a fair trial in this case.

{¶ 22} To prevail on an ineffective assistance of counsel claim, a defendant must prove that his attorney was ineffective under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687. "This requires

showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

{¶ 23} As to the first prong, much deference is given to trial counsel. "[A] court must indulge in a strong presumption that the challenged action might be considered sound trial strategy. Thus, judicial scrutiny of counsel's performance must be highly deferential." (Citations omitted.) *State v. Bird*, 81 Ohio St.3d 582, 585, 692 N.E.2d 1013 (1998). Once the first prong is met, "prejudice" may be considered. To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1998), first paragraph of the syllabus. In other words, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id.* at 142.

{¶ 24} Speculation does not prove either prong under *Strickland*. *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 53 ("speculation cannot prove prejudice"); *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (a speculative argument cannot be a basis for finding deficient performance under an ineffective assistance of counsel claim). In addition, "[a] debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137, ¶ 50. Decisions about what evidence to present, if any, and which witnesses to call, if any, are committed to counsel's professional

judgment. (Citations omitted.) *State v. Thomson*, 2d Dist. Clark No. 2018-CA-135, 2020-Ohio-600, ¶ 11. "Such decisions are ordinarily deemed to be matters of trial strategy that will not be second-guessed by a reviewing court." (Citations omitted.) *Id.* Furthermore, "[h]indsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time." *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 25} Said claims his trial counsel committed several errors that resulted in prejudice to him. We note that Said's complaints about his counsel's performance must be considered in the context of the entire trial and counsel's actions cannot individually be taken out of context to prove ineffective assistance of counsel. With the above-mentioned standards in mind, we have reviewed individually Said's claims of ineffective assistance of counsel and, for the following reasons, we find them to be without merit.

{¶ 26} Said first points out that his trial counsel filed a motion for continuance of trial due to a well-publicized conviction of a Muslim man in another state with Said's same last name, who was also convicted of harming his daughter; the motion was denied. Said argues that this news about the other Muslim man was prejudicial to his case, yet his trial counsel did not mentioned it during voir dire or at any other time.

{¶ 27} During voir dire, the trial court asked prospective jurors whether any of them had formed or expressed an opinion as to the guilt or innocence of Said at that point in time and whether any prospective juror was unable to lay aside such matters as race, religion, or sympathy. Said's counsel also explained to potential jurors that he was seeking a fair and impartial jury and asked, in general, whether each potential juror

already believed that "[t]here's got to be something to this thing," in an effort to elicit whether any potential juror was biased or unable to be fair. We conclude that these questions were sufficient to reasonably ensure that prejudice would have been discovered if present.

**{¶ 28}** We are not going to impose hindsight views about how trial counsel might have questioned the jury differently. *See State v. Mundt*, 115 Ohio St. 3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 63. "[C]ounsel's actions during voir dire are presumed to be matters of trial strategy." *State v. Allah*, 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, ¶ 16, quoting *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 206. There is no evidence in the record that any prospective juror knew anything about the case against a different man with the same last name in another state. It was well within counsel's trial strategy to avoid highlighting a man with the same name who was convicted in another state of harming his daughter; thus, we cannot say that counsel's performance was deficient or unreasonable. Moreover, even if he had shown that counsel's performance was deficient, Said failed to establish that the alleged error in voir dire prejudiced him in any way and that, but for the error, the outcome of his trial would have been different. Thus, we cannot say that Said's trial counsel was ineffective in this regard.

**{¶ 29}** Said next asserts that trial counsel was ineffective because he did not file substantive pretrial motions. Said's original attorney was substituted with the attorney who represented him at trial approximately two and a half months after the indictment was filed; the original attorney had filed pretrial motions related to discovery and a bill of

particulars. After Said's trial counsel was substituted, his new counsel filed only a motion for bond modification before trial, which was later withdrawn. Although Said argues that his trial counsel was ineffective because he did not file pretrial motions, he does not suggest what motions should have been filed; there was no evidence of a lineup, a search without a warrant, statements that Said had made which might have been subject to suppression, or any other issue potentially the subject of a pretrial motion. Thus, we cannot say that counsel's decision to not file additional pretrial motions was unreasonable. Additionally, Said has again failed to establish that counsel's alleged error in not filing pretrial motions prejudiced him in any way that would have changed the outcome of his trial. Under these circumstances, we cannot say that Said's trial counsel was ineffective by not filing pretrial motions.

{¶ 30} Said also argues that his trial counsel was ineffective because he deferred his opening statement. Although Said's counsel did not deliver his opening statement immediately following the State's, he merely deferred delivering it until after the State's case-in-chief. Upon delivering his opening statement, Said's counsel explained to the jury that he had delayed giving his opening statement because this case was a "classic he said/she said" and, because F.A. had previously made inconsistent statements, he believed that he should deliver his opening statement once he knew the content of her trial testimony. Said's counsel did not waive giving an opening statement; he ultimately delivered one. Under these circumstances, we cannot say that Said's trial counsel was ineffective with respect to deferral of his opening statement.

{¶ 31} Said next complains that his trial counsel did not object to certain testimony

provided by F.A. to explain the burn scars on her cheek and chin. At trial, F.A. testified that, on a day in November 2021, Said was angry with her, retrieved a knife, heated it on the stove, and then placed the hot knife on her face while his girlfriend restrained her. Following F.A.'s testimony, the State presented photos taken by Officer Zimmerman of what F.A. claimed were "burn marks and a mark on my cheek" to the jury, and then it had F.A. walk in front of the jury so that each juror could see the scars on her face. Said asserts that F.A. had provided the information regarding her burns to Officer Zimmerman "out of the blue" and that trial counsel was ineffective for not objecting to this evidence because there were no cuts, bruises, bleeding, or medical treatment. We disagree.

{¶ 32} According to F.A., Officer Zimmerman asked F.A. what had happened to her face; thus, F.A. did not provide information regarding her facial scars "out of the blue." The entire interaction between Officer Zimmerman and F.A. was captured on the officer's body camera, and it is clear from the record that Said and his counsel were well-aware of the contents of the body camera video prior to trial. F.A.'s testimony was relevant, as these allegations formed the basis of the charges against Said, and Said has not demonstrated how such testimony was prejudicial. "An attorney's failures to object * * * are within the realm of trial tactics and do not, absent a showing of prejudice, deny a defendant effective assistance of counsel." *State v. Davidson*, 11th Dist. Portage No. 2005-P-0038, 2006-Ohio-1458, ¶ 34, citing *State v. Knepper*, 11th Dist. Trumbull No. 3950, 1989 WL 506392 (May 19, 1989), quoting *State v. Hunt*, 20 Ohio App.3d 310, 486 N.E.2d 108 (9th Dist.1984). Under these circumstances, we cannot say that counsel's performance was deficient or that his failure to object to this portion of F.A.'s testimony

was prejudicial, as the evidence was directly relevant to the charge of felonious assault. We cannot say that Said counsel's provided ineffective assistance in this respect.

**{¶ 33}** Said further contends that his trial counsel was ineffective in cross-examining F.A. regarding her allegations on video to Officer Zimmerman that Said had a gun in the house and had previously "killed someone in Columbus." Said acknowledges that the crux of his counsel's defense was that "F.A. was not a reliable witness, was making up what happened, instigated by other family members, in order to live with her grandmother, where she had more privileges and less restrictions; and also that Appellant was indeed a good and devoted father." However, Said argues that his counsel undercut his defense by eliciting testimony from F.A. to bolster her credibility and to demonstrate Said's guilt with introduction of evidence of prior bad acts.

**{¶ 34}** At trial, the following exchange took place on cross-examination between Said's counsel and F.A.:

[Counsel:]   Okay. So you're saying today that your dad, who is a grown man, hit you ten times in the head with a hand and a fist, is that right? Five to ten times?

[F.A.:]   With his forearm.

[Counsel:]   Okay. Did you have any cuts on you?

[F.A.:]   No, but I did have a bruise.

[Counsel:]   I didn't see bruise in the picture. Are you saying there was a bruise?

[F.A.:]   Right here (indicating).

[Counsel:] Did you have any drops of blood from your tooth hitting your cheek or anything?

[F.A.:] No.

[Counsel:] Or getting hit in the face?

[F.A.:] No.

[Counsel:] Did you even need a Band Aid?

[F.A.:] No.

[Counsel:] You're saying your grown-man father hit you in the head, but you really didn't have injuries.

[F.A.]: I had a bruise.

[Counsel:] That you said is here. Okay.

[F.A.:] Yes.

[Counsel:] The police came a little while later, right?

[F.A.] Yes.

[Counsel:] So there's a video we're going to watch after you're gone. You don't appear to be crying in that video. Do you remember?

[F.A.:] Because I wiped my tears.

[Counsel:] Okay.

[F.A.:] I wasn't really crying much.

[Counsel:] You don't cry much?

[F.A.:] (No audible answer)

[Counsel:] At some point after your dad was in cuffs, do you remember

walking with Officer Zimmerman into his bedroom saying – pointing at the mattress and said, "My dad's gun is under here?"

[F.A.:]  Yes.

[Counsel:]  Do you ever see a gun under there?

[F.A.:]  Yes.

[Counsel:]  Do you remember a little while later, walking down the hallway and telling Officer – with Officer Zimmerman and saying, "My dad killed someone in Columbus?"

[F.A.:]  Cut their neck.

[Counsel:]  I think you said, "Killed someone."

[F.A.:]  I don't know if he was killed, but I know he cut his neck.

* * *

[Counsel:]  So what knowledge do you have of something in Columbus, your father injuring somebody in Columbus?

[F.A.:]  What'd you –

[Counsel:]  Did you see something? How do you know your dad injured somebody in Columbus or killed them?

[F.A:]  Because I saw it with my own two eyes.

[Counsel:]  You saw him kill somebody in Columbus?

[F.A.:]  I don't know if he's dead; I don't know if he's alive.

[Counsel:]  Was it self-defense?

* * *

{¶ 35} Following this exchange, the court requested counsel at sidebar, asking where he was going with this line of questioning. Said's counsel explained to the court that F.A. had told Officer Zimmerman, as seen on body-camera video, that Said had killed someone in Columbus. Counsel essentially explained that this statement pertained to the issue of F.A.'s credibility and had to be addressed to demonstrate that F.A.'s allegations of Said's prior violent acts were not true, as he had never been charged and there was no proof of that ever happening.

{¶ 36} First, we disagree that Said's counsel's cross-examination of F.A. bolstered her credibility. A review of the entire record makes clear that the trial strategy of Said's counsel was to undermine F.A.'s credibility, a reasonable strategy under the circumstances. Said's counsel made several attempts to discredit F.A. and to question the veracity of her testimony. Additionally, the only opportunity for Said's counsel to question F.A. about her conversation with Officer Zimmerman was on cross-examination, as he would not have been able to call her back to the witness stand to discuss it after the video was shown to the jury. Under these circumstances, we cannot say that Said's trial counsel was ineffective; it was a reasonable trial strategy for Said's counsel to question F.A. about her statements to Officer Zimmerman in an effort to discredit her, and there is also no demonstration of prejudice.

{¶ 37} Next, Said contends that his trial counsel was ineffective because he did not object to Officer Zimmerman's testimony allegedly vouching for F.A.'s credibility and corroborating her testimony and did not object to Officer Zimmerman's hearsay testimony.

Again, the strategy employed at trial by counsel was to undermine the credibility of F.A. Initially, Officer Zimmerman testified regarding her investigation and the statements made by F.A. during her interview at the apartment. Later, the following exchange took place between Said's counsel and Officer Zimmerman:

[Counsel:]  Did you, while you were out there, did you hear any yelling or whispering under the door or coming from inside?

[Officer:]  Just movement.

[Counsel:]  So no – nothing other than – okay. No yelling, cussing, anything like that?

[Officer:]  No.

[Counsel:]  Later or during your call, did she have the opportunity to call her grandmother at some period of time?

[Officer:]  Yes.

[Counsel:]  Did her mood change when she talked to her grandmother?

[Officer:]  She was happier than she was in the initial call.

[Counsel:]  Was a plan formulated to go to her grandmother's that day?

[Officer:]  I don't believe that day, no.

[Counsel:]  In that video, there was an African American female. Who was that lady?

[Officer:]  She would like to remain anonymous.

[Counsel:]  I don't mean a name. I mean what was her –

[Officer:]  She's a neighbor.

[Counsel:]    A neighbor.

[Officer:]    Uh huh.

[Counsel:]    Was she a sometime babysitter?

[Officer:]    I can't answer that. I don't know.

[Counsel:]    Okay. When she's describing how she was struck, she – it sounds like she just said "with an open hand." Right?

[Officer:]    Correct.

[Counsel:]    Did she ever say anything about a forearm being used?

[Officer:]    No sir.

[Counsel:]    Did she ever say anything about a closed hand?

[Officer:]    No.

[Counsel:]    When you were talking to her at close range, did you find it odd that she said she'd been struck ten times by a man, but she didn't have any cuts or bruises other than messed up hair?

[Officer:]    No.

* * *

[Counsel:]    Did anyone report physical contact?

[Officer:]    One of the parties that wanted to remain anonymous said that they saw [F.A.] being drug by her arm.

[Counsel:]    Back to the – the apartment, I guess?

[Officer:]    They didn't go that far into detail.

* * *

[Counsel:]    At some point, I think you said you were telling the responding supervisor that – about a burning incident that happened last month. This was February 1st, was it?

[Officer:]    Correct.

[Counsel:]    So that would have been January?

[Officer:]    Correct.

[Counsel:]    The previous month. But then yesterday she testified, she was very specific about something – about that date being in November, and she could tell us the date. Do you know why that discrepancy would be three months prior?

[Officer:]    In my – in my experience, it's not uncommon for traumatized victims to not have a very good grasp on date ranges. That's something that typically comes at a later date.

* * *

[Counsel:]    Did she walk over to the bed and try to lift the mattress and show you a weapon that was under the gun [sic] – under the mattress supposedly?

[Officer:]    I don't believe she tried to lift the mattress. She tried to tell me; I told her I didn't have the grounds to do a search without a search warrant. So – she told me about a – a glock that was underneath the bed.

[Counsel:]    Did anybody ever go follow up on that to your knowledge?

[Officer:]    To my knowledge, no.

* * *

[Counsel:]    To your knowledge that day, did the child ever get any kind of medical treatment or need it?

[Officer:]    Not to my knowledge.

**{¶ 38}** Said initially argues that his trial counsel should have objected to Officer Zimmerman's testimony on the basis of hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Hearsay is not admissible unless it falls within one of the permissible hearsay exceptions. Evid.R. 802. However, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Ohio v. Schenck*, 12th Dist. Preble No. CA2021-02-003, 2022-Ohio-430, ¶ 36, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103. "When a claim of ineffective assistance of counsel is based on counsel's failure to file an objection * * *, the appellant must demonstrate that the objection * * * had a reasonable probability of success." (Citations omitted) *State v. Jones*, 10th Dist. Franklin Nos. 18AP-33 and 18AP-34, 2019-Ohio-2134, ¶ 52. "If the objection or motion would not have been successful, then the appellant cannot prevail on an ineffective assistance claim." *Id.*

**{¶ 39}** We do not agree that Officer Zimmerman "vouched" for F.A.'s credibility. Officer Zimmerman stated that she did not hear any yelling, cussing, or whispering under

the door or coming from inside the apartment, that F.A. had only messy hair and no cuts or bruises, and that F.A. never required or received medical treatment. Zimmerman also testified that there was a discrepancy in the dates provided by F.A. as to when her face had been burned and that F.A. was noticeably happier after the incident at the apartment when she spoke to her grandmother, potentially suggesting that she was being influenced by other family members. All of the foregoing addressed counsel's trial strategy of attempting to challenge the credibility of F.A.'s testimony.

**{¶ 40}** Additionally, at the start of her testimony, Officer Zimmerman simply testified regarding her investigation and the statements made by F.A. during her interview at the apartment. "Law-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 172. Moreover, F.A. testified prior to the testimony of Officer Zimmerman, and while Said's trial counsel asked the officer questions that may have resulted in hearsay testimony, the effort was consistent with his trial strategy to discredit F.A.'s testimony by eliciting testimony that supported Said's theory that F.A. had been untruthful and her motivation in testifying untruthfully was to be able to live with her grandmother rather than her father. Even if Said's counsel had objected to this portion of Officer Zimmerman's testimony on the basis of hearsay, we cannot say that the objection would have had a reasonable probability of success. Nevertheless, we need not decide whether Officer Zimmerman's testimony constituted hearsay because Said did not demonstrate that he was prejudiced by this aspect of the officer's testimony.

**{¶ 41}** Lastly, Said contends that counsel's questioning of Officer Zimmerman

regarding the gun was improper. F.A. stated on the body camera video that Said had a gun in his bedroom, yet during her testimony, Officer Zimmerman admitted that no gun was ever found. Thus, counsel's questions further bolstered his trial strategy of showing that F.A. was untruthful. Even if this testimony was improper, Said did not establish that he was prejudiced by Zimmerman's testimony in this respect.

**{¶ 42}** Next, Said asserts that his trial counsel was ineffective because he did not move for a directed verdict under Crim.R. 29. Crim.R. 29 motions for acquittal test the sufficiency of the evidence presented at trial. *State v. Williams,* 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996). In this case, there was sufficient evidence presented at trial to convict Said of the charges against him if the State's evidence were believed. Thus, counsel did not provide deficient representation by not moving for acquittal, because the evidence was sufficient to sustain his conviction on each count. *See State v. Hibbler*, 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, ¶ 26. Although the jury could have weighed the evidence differently, "the weight given to the evidence and which of competing inferences should be drawn from that evidence are matters primarily for the trier of fact." *State v. Reynolds*, 2d Dist. Montgomery No. 19084, 2002-Ohio-3811, ¶ 67, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶ 43}** Said next contends that his trial counsel was ineffective by not calling any character witnesses to present evidence about his good parenting history, which may have created a question regarding F.A.'s credibility and the veracity of her testimony. However, we will not second-guess counsel's decision whether to call witnesses because

"[d]ebatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available." *State v. Albert,* 10th Dist. Franklin No. 14AP-30, 2015-Ohio-249, ¶ 40, citing *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). The decision about what evidence to present, if any, and which witnesses to call, if any, was within counsel's professional judgment. Said's counsel was confronted with explaining a body camera video that portrayed Said as argumentative and hostile toward law enforcement and displayed his conduct toward his daughter in the presence of law enforcement officers. By putting on character witnesses, trial counsel would have opened the door to the State's presentation of testimony that may have cast Said's character in a negative light. It was sound trial strategy to avoid putting Said's character on display by calling witnesses to attest to his parenting, which the State could have then countered by highlighting his conduct on the body camera video or by calling witnesses who could discuss his character. Moreover, there is no evidence in the record that suggests such character witnesses were even available and willing to testify on Said's behalf. Absent evidence indicating that positive character witnesses were willing and able to testify, we cannot say that counsel's performance was deficient or that counsel's failure to call unidentified character witnesses prejudiced Said in any way.

{¶ 44} Said also argues that his trial counsel was ineffective because he did not file a notice of appeal on Said's behalf. However, Said's appeal is now before this court, and thus we cannot say that counsel's action in not filing an appeal prejudiced Said.

{¶ 45} Finally, Said contends that the cumulative errors of trial counsel, considered

together, denied him a fair trial or, in combination, constituted ineffective assistance of counsel. Under the cumulative error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. "A claim of cumulative error based on the ineffective assistance of counsel would require a determination that while no single act by trial counsel met the standard set forth in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the cumulative effect of counsel's conduct satisfied the *Strickland* standard." *State v. Howard*, 2d Dist. Montgomery No. 28314, 2020-Ohio-3819, ¶ 85, citing *State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 55. However, "[e]ach assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim; cumulative error cannot be established simply by joining those meritless claims together." (Citations omitted.) *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 170. In other words, "the accumulation of non-errors cannot collectively amount to a violation of due process." (Citation omitted.) *Id.* at ¶ 171, quoting *Campbell v. United States*, 364 F.3d 727 (6th Cir.2004).

{¶ 46} In support of his cumulative error argument, Said filed a notice of supplemental authority citing *State v. Bruce*, 3d Dist. Union No. 14-22-11, 2023-Ohio-3298. In *Bruce*, the State introduced evidence of prior acts, which the court found to constitute improper testimony and to which the defendant's trial counsel failed to object. The *Bruce* court reversed the defendant's conviction, reasoning:

Having considered each of these alleged instances of deficient performance, we conclude that the result of defense counsel's numerous instances of inaction was the introduction of inadmissible and highly prejudicial testimony. The cumulative effect of these errors was to deny [Bruce] his right to a fair trial. For this reason, we conclude that [Bruce] has carried the burden of establishing that he was denied his right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.

*Id.* at ¶ 115.

**{¶ 47}** However, the circumstances at trial in *Bruce* were different than the circumstances in this case. In *Bruce,* the State introduced numerous pieces of prejudicial evidence to which defense counsel failed to object, and, on appeal, the court concluded that the result of defense counsel's numerous instances of inaction constituted cumulative error, denying the defendant his right to a fair trial. Conversely, in this case, the State not set forth numerous pieces of prejudicial evidence without objection, as was the circumstance in *Bruce,* and Said's counsel engaged in sound trial strategy by making consistent efforts to discredit F.A.'s testimony.

**{¶ 48}** As already explained, Said has not shown that his counsel's performance was deficient in any way, and thus he has not overcome the presumption that his trial counsel's actions were sound trial strategy. *See Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373. "While counsel's strategy ultimately did not work, it was not unreasonable, and certainly not the kind of incompetence necessary to support a claim

for ineffective assistance of counsel." (Citation omitted) *State v. Reynolds*, 2d Dist. Montgomery No. 19084, 2002-Ohio-3811, ¶ 76. Said cannot establish cumulative error by stringing together his numerous meritless claims of ineffective assistance of counsel.

{¶ 49} Said's claims that trial counsel provided ineffective assistance are without merit. Said's second assignment of error is overruled.

{¶ 50} In his third assignment of error, Said argues that sentencing a criminal defendant to an indefinite term of prison to be determined by the prison under the Reagan Tokes Act is unconstitutional. We disagree.

{¶ 51} The Reagan Tokes Law provides for indefinite sentencing for offenders convicted of first- or second-degree felonies (eligible felonies) for which life imprisonment is not an available sentence. *State v. Hacker*, Ohio Slip Opinion No. 2023-Ohio-2535, __ N.E.3d __, ¶ 7, citing R.C. 2929.14(A)(1)(a) and (2)(a). As pointed out by the State and acknowledged by Said, the Supreme Court of Ohio has upheld the constitutionality of the Reagan Tokes Law. *Id.* Thus, the trial court did not err in sentencing Said under the Reagan Tokes Act.

{¶ 52} Said's third assignment of error is overruled.

### III.     Conclusion

{¶ 53} Having overruled all of Said's assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J., and WELBAUM, J., concur.